IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

DIANA I. LAGARES SANTANA

Debtor

CASE NO. 18-07127 (ESL)

CHAPTER 13

OPINION AND ORDER

This case is before the court upon EMI Equity Mortgage's ("EMI") *Motion Requesting the Stay be Lifted* (Docket No. 16) *and the Debtor's Response to Motion Requesting that Stay be Lifted Docket No. 16* (Docket No. 21). During the hearing held on February 26, 2019, the court requested the parties to submit legal memoranda regarding their respective arguments, the main issue being whether the Debtor had an interest over the property post-petition, and was, thus, protected by the automatic stay. The parties submitted their legal memoranda in response to the court's order on March 28, 2019 (Dockets Nos. 25 & 26). Additionally, the *Debtor's Urgent Informative Motion* filed on January 16, 2020, argues that EMI violated the automatic stay by pursuing the eviction of the Debtor (docket No. 34).

For the reasons stated herein, the court finds that the property located at Urbanización Borinquen Valley at Caguas, Puerto Rico is not property of the estate, as argued by the Debtor, and that the eviction actions pursued by the Creditor are not in violation of the automatic stay.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

-1-

Procedural History

On January 30, 2019, EMI Equity Mortgage ("EMI") filed its Motion Requesting the Stay be Lifted (Docket No. 16). The Creditor stated that although the Debtor listed as property of the estate a property located at Urb. Borinquen Valley in Caguas, P.R., the property was foreclosed on October 18, 2018, and acquired by the Movant. Therefore, the property is no longer property of the estate although the Debtor refuses to abandon it. EMI included as an attachment the Minute for First Auction ("Acta de Primera Subasta") which evidences that the property was bought by EMI for $127,922.00 on October 18, 2018. The Creditor further includes a copy of the Judicial Sale Deed executed on the same date through Public Notary Jaime E. Dávila Santini.

On February 11, 2019, the *Debtor's Response to Motion Requesting that Stay de Lifted Docket  No. 16* was filed (Docket No. 21). The Debtor alleges that, as of the date of the filing of the bankruptcy petition, the Debtor still had a property interest in the property located at Caguas and that the Debtor is entitled to provide for curing of the arrears through a chapter 13 plan and to continue making direct mortgage loan payments to EMI. The Debtor argues that at the time of the filing of the petition, the state court had not issued an order confirming the foreclosure auction process and the judicial sale, which was issued on December, 20, 2018, as required by Article 107 of the Mortgage Law of Puerto Rico (Ley del Registro de la Propiedad Inmobiliaria del Estado Liber Asociado de Puerto Rico) Law 210-2015, as amended. The Debtor alleges that: (1) the State Court denied EMI's request for confirmation of the transfer/judicial sales of the property on October 18, 2018; (2) the Debtor filed the bankruptcy petition on December 6, 2018; (3) and the State Court confirmed the sale post-petition (December 20, 2018). Therefore, at the time the petition was filed the Debtor's interest in the property was "still alive and, thus, the property became property of the estate as of the date of the filing of the present bankruptcy petition and the Debtor is entitled to a bankruptcy stay to protect the property."

EMI states in its *Memorandum of Law in Compliance with Court's Order* (Docket No. 25) that, in Puerto Rico, the Civil Code establishes when the transfer ("tradición") occurs and, in the case of a judicial sale, the transfer occurs when the Deed of Sale is executed. The creditor states that the "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico", Law 210-2015, was amended to clarify that the confirmation of the sale is not necessary prior to executing the sales deed and, therefore, not necessary for the transfer to occur. EMI further states that the sale deed was presented in the Property Registry, as evidenced by the presentation receipt included in the motion. Therefore, EMI requests the court to lift the stay in its favor.

The Debtor argues in her *Debtor's Legal Memorandum in Compliance with Order, Docket No. 22* (Docket No. 26). that, at the time of the filing of the petition, she had an interest in the real property located at Borinquen Valle Development 167 Guayo Street, Caguas, P.R. The Debtor states that on October 18, 2018, the day the public auction wad held, the property was adjudicated to EMI for the sum of $127,922.00. On the same date, EMI filed at the State Court a motion requesting the confirmation of the aforestated auction and foreclosure process. The Debtor argues that, on the same date, the State Court denied EMI's motion requesting confirmation of the foreclosure auction process. The state court's order, confirming the foreclosure auction and judicial sale was issued on December 20,2018, and the Debtor filed the bankruptcy petition on December 6, 2018. The Debtor argues that she therefore has an interest in the property. The Debtor states that the Puerto Rico Real Estate Registry Act of 2015, 30 L.P.R.A. Sections 6001 et seq., "…provides the legal framework to determine what are the debtor's rights over real property which was subjected to a foreclosure and judicial sales." The Debtor argues that Article 107 of Law 210 provides that the judicial foreclosure sale must be confirmed by the state court and that, if the state court denies the confirmation of the adjudication/sales of the auctioned property, the judicial sale will be set aside and have no judicial value. Therefore, the denial of

-3-

EMI's request for confirmation on October 18, 2018 leaves EMI, on the one hand, with an unperfected foreclosure auction and an unperfected judicial sales deed, subject to being set aside and annulled by the state court, and the Debtor, on the other hand, with a property interest as of the commencement of the case. The Debtor states that she has a "…"property interest" under section 541 of the Bankruptcy Code, 11 U.S.C. § 541, since as of the commencement of the case the Property's title was still registered at the Property Registry under the Debtor's name, the Debtor had physical possession of the Property, EMI had an unperfected foreclosure auction and an unperfected judicial sales deed, having the state court denied its confirmation, which is an indispensable requisite for the validity of both the public auction proceedings and the judicial sales deed." The Debtor further alleges that EMI's actions towards obtaining the judicial sale confirmation on the state court were in violation of the automatic stay and that the judicial action confirming the sale post-petition is void, absent relief from the automatic stay.

On July 9, 2019, EMI filed its *Motion Requesting Order* (Docket No. 31). The Creditor requested the court to determining that the stay in the present case had terminated on March 31, 2019, pursuant to Section 362(e)(2) because a final decision was not rendered during the corresponding sixty (60) day period without an extension, either by agreement of the parties or by the court, for good cause. The *Debtor's Reply to Motion Requesting Order* was filed on September 15, 2019, arguing that the parties consented to submit the issue to the court's consideration on the hearing held on February 26, 2019 and that EMI's acts in the process demonstrate that it had agreed with the extension of the determination period (Docket No. 32). The Debtor alternatively argues that "compelling circumstances" are present in the case to extend the stay beyond the 60-day determination period.

On December 23, 2019, EMI filed its *Motion Requesting Some Disposition* (Docket No. 33). The Creditor realleges that the property is not property of the estate as the judicial sale deed

-4-

was executed pre-petition, that is, on October 18, 2019, and, therefore, the property at issue is not protected by the automatic stay. EMI argues that "[t]he court has created the impression that there is a genuine issue of fact or law to be passed upon by failing to act on the matter immediately, during the hearing on February 26, 2019 or shortly after March 28, 2019, when Memorandums of Law where filed by both parties in support of their respective contentions. Under the scenario of a Motion Under 362 the Court inaction is causing unreasonable delay; which delay is prejudicial to appearing party because Debtor is occupying the property without paying rent since November 2018." Additionally, EMI argues that the court shall also clarify why the stay has not terminated in view of the plain language of Section 362(e)(2).

On January 16, 2020, the *Debtor's Urgent Informative Motion* was filed (Docket No. 34). The Debtor states that on January 15, 2019, the Debtor was visited at the property by a Marshall form the First Instance Court, Caguas Superior Part, who left a copy of a Notice of Eviction executed and signed on January 13, 2020, with the copy of a Writ and Order issued by the Caguas Superior Court dated January 10, 2019. The Debtor argues that EMI's acts to pursue and cause the eviction are a willful violation of the automatic stay.

## Legal Analysis

The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997). The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2018). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy

-5-

goal of equality of distribution" Id. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. See In re Soares, 107 F. 3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." In re Soares, 107 F. 3d. at 975-976.

However, "[u]nless it is extended by the court [] as a general rule the stay only protects, by its terms, actions against the debtor, the debtor's property, or property of the estate. It does not, for example, protect nonparties, such as, for example, guarantors of debtor's debt (except in Chapters 12 and 13 where there is a codebtor stay); officers, directors, or shareholders of a corporate debtor, partners of a partnership that is in bankruptcy (or the reverse); or a nonfiling spouse of a debtor." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7:4 Vol. 1 (5th ed. 2017), pgs. 1531-1532.

Property of the estate is broadly construed pursuant to 11 U.S.C. §541. "However, nothing in this section 541 can revest debtor with property lost prepetition, such as through foreclosure and eviction." 5 Lawrence P. King, Collier On Bankruptcy P 541.04 (15th Edition Revised 2003). When considering "the debtor's interests in real property it is necessary to look outside of bankruptcy law to determine the nature and extent of such interests." Collier P 541.05. See also Tidewater Finance Company v. Moffett (In re Moffett), 356 F.3d 518 (4th Cir. 2004); Boyd v. United States (In re Boyd), 11 F.3d 59 (5th Cir. 1994). Section 541(d) provides whether or not a property is property of the estate when the debtor only has bare legal title on the property and lacks any equitable interest. To determine whether debtor's foreclosed property is property of the estate, or the nature of debtor's interest in said property, if any, the court must examine the applicable statutory provisions of Puerto Rico law. See In Re Martinez Ortiz, 306 B.R. 727 (Bankr. D.P.R. 2004).

The Real Property Registry Act of the Commonwealth of Puerto Rico ("Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico")[1], Law 210-2015, in Article 107 (30 L.P.R.A §6124) describes the procedures following the judicial auction and sale of real property and delimits a procedure of confirmation of a judicial auction or sale by the state court.[2] Article 107, in its pertinent part, provides:

> "If the court concludes that the requirements established in this subtitle are not complied with, completely or partially, it will describe the reasons on which the determination is based and will order that the mistakes or faults be corrected and that the incorrect actions found in the proceedings be duly performed. The court may order the debtor or the third holder to halt payment of any amounts required to pay in excess of the amounts owed or not covered by the mortgage lien. Once the mistakes or faults are corrected or rectified as ordered by the court, the court will confirm the adjudgment or sale. The secured creditor may commence a new judicial sale proceeding in accordance with this title if the sale is not confirmed due to a mistake in the proceeding or any other reason determined by the court.
>
> If the court ultimately does not confirm the adjudgment or sale, the same will remain without effect or juridical value, returning the amount paid to the buyer."[3]

---

[1] Our translation. No official translation in the English language of this Act is available as of the entry of this Opinion and Order.

[2] This procedure was added to the law enacted on 2015 as a new procedure part of the execution of judicial mortgage sales. The confirmation of the judicial sale was not part of the procedures required before the enactment of the Real Property Act of the Commonwealth of Puerto Rico of 2015.

[3] Article 107 in the Spanish language provides in its entirety:

"Celebrada la subasta, el alguacil devolverá a la Secretaría del Tribunal el mandamiento y el acta junto con el edicto y demás documentos relativos a la subasta, incluyendo cualquier objeción al procedimiento hecho durante el mismo. El secretario pasará inmediatamente al tribunal todo el expediente del procedimiento y éste dentro de un término que no excederá de diez (10) días lo examinará cuidadosamente para cerciorarse de que en todos los trámites del procedimiento se cumplieron debidamente los requisitos señalados en este Subtítulo, y así lo determinará. A petición de parte, el tribunal dictará una orden confirmando la adjudicación o venta de los bienes hipotecados, sin la cual no será inscribible en el Registro de la Propiedad la adjudicación o venta.

No obstante lo anterior, si se debe a la demora del tribunal en emitir la orden confirmando la adjudicación o venta de los bienes hipotecados, la ausencia de dicha orden no podrá ser notificada como defecto que impida la inscripción de la adjudicación o venta judicial. En la medida en que la ausencia de dicha orden sea el único impedimento para proceder a la inscripción de la adjudicación o venta judicial, el término del asiento de presentación correspondiente continuará vigente hasta el día en que se presente en el Registro de la Propiedad una copia de dicha orden. En la alternativa, en caso de que el Registrador notifique como defecto el que el tribunal haya emitido una orden anulando la adjudicación o venta de los bienes hipotecados, la vigencia de la fecha de presentación se regirá conforme la sec. 6390 de este título.

Si el tribunal concluye que no se han cumplido, en todo o en parte, los requisitos dispuestos en este subcapítulo, expondrá las razones en que se funda, y ordenará se corrijan los errores, faltas o defectos que haya observado, y que se practiquen debidamente las diligencias o actuaciones incorrectas que surjan del expediente. Podrá ordenar además

-7-

Moreover, Article 112[4], which addresses the execution of the judicial sale deed, states the following:

> "When the estate or right is sold or adjudged and the corresponding price is consigned, on the same or posterior date, the marshal who performed the auction will execute the corresponding public transfer deed in representation of the owner or holder of the mortgaged assets through a notary selected by the buyer, who should pay for the fees of the deed. The order which confirms the adjudgment or sale of the mortgaged assets established in Article 107 of the present law will not be a previous requirement to the execution of the public transfer deed by the marshal and the buyer, although it will be a requirement for its inscription. The attorney who appeared in the legal process in representation of the Defendant or the buyer, or who appeared as an authorized official on the public auction process will be impeded to authorize the public deed in the capacity of a notary. In the deed, the notary will give faith of having cancelled or rendered useless the promissory note object of the judicial adjudgment. The marshal will put the new owner in possession, if so requested in a term of twenty (20) days from the sale or adjudgment. At the lapse of this twenty (20) days the court may order, without the necessity of any ulterior proceeding, that the eviction of the occupant or occupants of the estate be completed, or anybody that, by tolerance of the debtor, occupies the property."[5]

al deudor o tercer poseedor que no pague cualquier cuantía que se le haya requerido pagar en exceso de las debidas o que no esté cubierta por la garantía hipotecaria. Una vez corregidos o subsanados esos errores, faltas o defectos en la forma ordenada, el tribunal confirmará la adjudicación o venta. El acreedor hipotecario podrá tramitar un nuevo procedimiento de ejecución con arreglo a lo dispuesto en este subcapítulo cuando la venta no sea confirmada por error en el procedimiento o cualquiera otra razón determinada por el tribunal.

Si el tribunal finalmente no confirma la adjudicación o venta, quedará la misma sin efecto ni valor jurídico alguno, devolviéndose el precio pagado al comprador."

[4] An amendment to the Law was made on August 5, 2016, to ensure that the new procedures to the judicial mortgage sales remained expedient and simple. The amendment specifically addresses an inconsistency between Articles 107 and 112 in relation to the court confirmation requirement to adjudgment of the judicial sale after the auction is completed.

[5] Article 112 in the Spanish language provides in its entirety:
"Vendida o adjudicada la finca o derecho hipotecado y consignado el precio correspondiente, en esa misma fecha o fecha posterior, el alguacil que celebró la subasta procederá a otorgar la correspondiente escritura pública de traspaso en representación del dueño o titular de los bienes hipotecados, ante el notario que elija el adjudicatario o comprador, quien deberá abonar el importe de tal escritura. La orden que confirma la adjudicación o venta de los bienes hipotecados dispuesta en el Artículo 107 de la presente Ley, no será requisito previo para la otorgación de la escritura pública de traspaso por el alguacil de los bienes hipotecados al adjudicatario o comprador, aunque sí para que pueda quedar inscrita. El abogado que haya comparecido en el proceso legal en representación de la parte demandante, del adjudicatario o comprador, o haya comparecido como oficial autorizado de estos últimos en el proceso de pública subasta, estará impedido de autorizar dicho instrumento público en su capacidad de notario. En dicha escritura el notario dará fe de haber inutilizado y cancelado el pagaré garantizado con la hipoteca objeto de ejecución. El alguacil pondrá en posesión judicial al nuevo dueño, si así se lo solicita dentro del término de veinte (20) días a partir de la venta o adjudicación. Si transcurren los referidos veinte (20) días, el tribunal podrá ordenar, sin necesidad de ulterior

The court evaluates the interrelation of both articles and finds that the state court confirmation requirement of Article 107 does not intend to halt the sale or transfer of the property, as clarified through Article 112. Moreover, Rule 51.7 of the Rules of Civil Procedure of Puerto Rico, 32 L.P.R.A. Ap. V, R. 51.7, states that the execution of the public deed by the marshal and the buyer transfer the dominium of the real property.[6] This court has previously determined that in a mortgage foreclosure sale, title of the property is transferred to the purchaser when the deed of judicial sale is executed. See In Re Hernandez, 244 B.R. 549 (Bankr. D.P.R. 2000), In Re Martinez Ortiz, 306 B.R. 727 (Bankr. P.R. 2004). See also Rodriguez v. Naihomy (In Re Rodriguez) 334 B.R. 754 (1st Cir. B.A.P. 2005) and dissenting opinion at James Patrick Smyth Delgado v. Oriental Bank & Trust, 170 D.P.R. 73 (2007).

"Our juridical system requires, for the conveyance of ownership over the thing sold, not only the agreement of wills over the thing and its price—perfecting of the contract, § 1339 of the Civil Code—but, also, the tradition or delivery of the thing. Thus, § 549 of the Civil Code, 31 L.P.R.A. §1931, establishes that: "Ownership and other property rights are acquired and transmitted by ... in consequence of certain contracts, by tradition."" Serra v. Rivero, 99 D. P. R. 60 (1970). Section 1351 of the Civil Code states that "[w]hen the sale should be made by means of a public instrument, the execution thereof shall be equivalent to the delivery of the thing which is the object of the contract, if in said instrument the contrary does not appear or may be clearly inferred."

---

procedimiento, que se lleve a efecto el desalojo o lanzamiento del ocupante u ocupantes de la finca o de todos los que por orden o tolerancia del deudor la ocupen."

[6]Rule 51.7 of the Rules of Civil Procedure of Puerto Rico in the Spanish language provides in its entirety:
"En caso de venta de propiedad inmueble, el oficial o encargado o la oficial encargada de la venta otorgará una escritura pública a favor del comprador o compradora ante el notario o la notaria que este último o esta última seleccione, abonando este el importe de tal escritura. Dicho otorgamiento constituye la transferencia real del dominio del inmueble de que se trate."

The requirement included in Article 107 for the judicial sale to be confirmed by the state court was intended to provide the Property Registrar a sufficient warranty that the proceedings were performed accurately, as the requirement of "complimentary documents" to record the judicial sale deed was eliminated from the law. See Explanatory Memorandum of Law 210.[7]

Additionally, Article 107 states that when the only document missing in order for the Property Registrar to record the judicial sale deed is the order confirming the judicial sale, the filing entry ("asiento de presentación") will remain valid until the order confirming the sale is presented to the Registrar. This signifies that the judicial sale and transfer deed is not prohibited and gets access to the Registry even when the confirmation of the sale by the court is still missing and, although it cannot be recorded, it retains its position in the presentation order in the Property Registry.

The court further notes that Article 107 allows the modification or amendment of mistakes of the judicial sale procedures, as ordered by the court. Although a state court order denying the confirmation of the judicial sale was initially entered, the parties can amend or correct actions or ommitions to acquire judicial confirmation of the sale. The Article makes clear that some matters may be corrected after the judicial sale procedures have ended and before confirmation, although others may require the annulment of the judicial sale. The Debtor argues that, in the present case, the state court denied the confirmation of the judicial sale however the record is empty of any evidence of said denial and the corrective actions required by the state court. Furthermore,

---

[7] "Entre las medidas modernas adoptadas, es menester destacar la eliminación del procedimiento sumario de ejecución de hipotecas que está en desuso en esta jurisdicción desde hace varias décadas. A su vez, se simplifica el procedimiento ordinario de ejecución de hipotecas haciendo innecesario para el notario que autoriza la escritura de venta judicial que acompañe como complementarios, los documentos contenidos en el expediente del Tribunal. Esta medida encarece el trámite y atrasa la inscripción de la venta judicial por no estar disponibles los documentos complementarios que hoy exige la ley. Cónsono con la necesidad de simplificar procesos, se adopta la norma vigente en el Tribunal de Estados Unidos para el Distrito de Puerto Rico. Bastará que el Tribunal, a moción de parte, expida Orden de Confirmación de Venta en la que acredita que se cumplieron los procedimientos requeridos por ley, para que la escritura de venta judicial pueda inscribirse." Exposición de Motivos.

-10-

confirmation of the sale was granted by the state court on October 20, 2018. The court concludes that the initial denial of confirmation must have addressed the issues that were to be corrected or amended in order to grant the confirmation. The judicial transfer deed was executed prior to the filing of the petition and not having been annulled by the state court, the transfer of the property occurred pre-petition and the property is not property of the bankruptcy estate.

CONCLUSION

For the reasons aforestated, the court concludes that the property located at Urb. Borinquen Valley in Caguas, P.R. was transferred to EMI pre-petition through the judicial transfer deed and, therefore, is not property of the estate and not protected by the automatic stay.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of January, 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

-11-